UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MICHELLE JAMES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.: 8:15-cv-2424-T-23JSS |
| v. ) | |
| ) | |
| JPMORGAN CHASE BANK, N.A., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

**Table of Contents**

Introduction ............................................................................................................................... 1

Summary of the Settlement ...................................................................................................... 2

Notice and Claims Administration ........................................................................................... 2

Argument .................................................................................................................................. 4

    I.    The settlement satisfies all requirements and merits approval. .......................................... 4

        A.    The parties negotiated the settlement at arm's length and with the assistance of a well-respected mediator. ........................................................................................................ 5

        B.    Chase's legal and factual defenses posed significant risks to Plaintiffs' claims and those of Class Members. .......................................................................................................... 6

        C.    The settlement falls well within the range of recovery for similar TCPA class actions. . 8

        D.    The parties reached the settlement after being fully apprised of the risks and uncertainties associated with it. ......................................................................................... 10

        E.    Class counsel support the settlement as fair, reasonable, adequate, and in the best interests of Class Members. ............................................................................................. 11

        F.    The lack of any objections to the settlement supports its final approval. ...................... 11

    II.    Distribution of notice satisfied due process requirements. ............................................... 12

Conclusion .............................................................................................................................. 13

**Introduction**

This case arises from autodialed calls that JPMorgan Chase Bank, N.A. ("Chase") made to wrong or reassigned cellular telephone numbers, which were intended for Chase's own deposit account customers. That is, Michelle James and Nichole Seniuk (collectively, "Plaintiffs") allege that Chase violated the Telephone Consumer Protection Act ("TCPA") by placing autodialed calls to cellular telephone numbers that were reassigned from Chase customers to new cell phone subscribers or customary users, including Ms. James and Ms. Seniuk. Chase denies any liability for the telephone calls at issue or that its practices violate the TCPA.

Following discovery and motion practice, and as a result of Court-ordered mediation before Robert M. Daisley, Esq., the parties reached an agreement to resolve this class action. In short, the settlement calls for the creation of a non-reversionary, $3.75 million common fund, from which participating class members will be compensated. This Court preliminarily approved the settlement on November 22, 2016, authorizing the distribution of notice and claim forms to Class Members.[1] *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) (Merryday, J.).

Since then, more than 24,000 Class Members submitted valid claims for their *pro rata* share of the settlement fund, including 273 untimely but otherwise valid claims that the parties have exercised their discretion to accept. After deducting the costs of notice and claims administration, attorneys' fees and expenses, and incentive awards to Plaintiffs—which are subject to this Court's approval—each participating Class Member will receive approximately $81.87.[2]

---

[1]   The executed settlement agreement is found at Doc. 51-1 at 6-60. Capitalized terms herein have the same definitions as in the settlement agreement.

[2]   Plaintiffs calculated this per-claimant recovery after deducting the requested attorneys' fees and expenses, and the incentive awards Plaintiffs request, which are the subject of a separate

This per-claimant recovery compares favorably to similar TCPA class action settlements that have garnered final approval.

Moreover, only 31 Class Members out of 675,000—less than 0.0046% of the class—timely excluded themselves from the settlement. At the same time, no Class Members objected to any aspect of the settlement. Given this excellent result, and considering the overwhelmingly favorable support for the settlement from Class Members, Plaintiffs respectfully request that this Court finally approve the settlement, and enter a final judgment and order in the form agreed to by the parties.

## Summary of the Settlement

The settlement agreement defines a class under Rule 23(b)(3) comprised of:

All persons in the United States who received calls from Chase between January 1, 2014 and March 22, 2016 that (a) were directed to a phone number assigned to a cellular telephone service, (b) were wrong number calls—in that the subscriber or customary user of the phone number called was different from the party that Chase was trying to reach, (c) were placed using an automatic telephone dialing system, and (d) were directed to a phone number associated with a Chase deposit account according to Chase's records.

The settlement requires Chase to pay $3.75 million into a non-reversionary cash settlement fund, out of which the 24,156 valid claimants will be compensated *pro rata*. In exchange, Class Members will release their claims arising out of Chase's use of an automatic telephone dialing system to place calls to Class Members' cellular telephones during the class period.

## Notice and Claims Administration

KCC delivered the Court-approved notice to Class Members in accordance with this Court's preliminary approval order. *James*, 2016 WL 6908118, at *2. The successful claims rate

---

motion. The per-claimant recovery also factors in the cost of notice and administration, which is expected to be approximately $628,000. The per-claimant recovery may increase slightly if KCC Class Action Services, LLC ("KCC")—the Court-appointed settlement administrator—identifies any additional duplicate or fraudulent claims.

2

and lack of objections demonstrate not only the effectiveness of the notice, but also Class Members' satisfaction with the settlement.

*Direct Mail Notice*: After performing reverse telephone number look-ups on the telephone numbers provided to it by Chase as belonging to Class Members, KCC mailed more than 530,000 postcards, which included notice of the settlement and a detachable claim form, to potential Class Members. Declaration of Eric Robin Re: Notice Procedures, ¶¶ 3-6, attached as Exhibit A. KCC re-mailed any notices returned undeliverable to forwarding addresses, where undeliverable postcards were returned with a forwarding address. *Id*., ¶ 6. For undeliverable postcards returned without a forwarding address, KCC performed advanced address searches to locate updated addresses, and re-mailed postcards to any updated addresses obtained. *Id*.

*Publication Notice*: To supplement the robust direct mail notice program, KCC caused summary notice to be published in the January 9, 2017 issue of People magazine. *Id*., ¶ 7. KCC estimates that this notice reached 17.4% of Class Members. *Id*.

*Settlement Website*: KCC established and maintains a website dedicated to the settlement—www.JamesTCPAsettlement.com—that includes information pertinent to Class Members such as court filings, as well as answers to frequently asked questions. *Id*., ¶ 9. Class Members were able to file claims via the settlement website. *Id*. The website received 83,452 visits. *Id*.

*Toll-Free Hotline*: KCC established and maintains a toll-free telephone number—(844) 225-4535—for Class Members to obtain information about the settlement, and to submit claims. *Id*., ¶ 8. The toll-free telephone number received 6,396 calls. *Id*.

*Claims*: 24,156 Class Members submitted valid claims. *Id*., ¶ 12. 17,598 did so by mail (17,325 by March 21, 2017, and an additional 273 through May 1, 2017), 5,392 did so online, and 1,166 did so by telephone. *Id*.

3

*Exclusions*: Thirty-one Class Members excluded themselves from the settlement. *Id.*, ¶ 10. This amounts to less than 0.0046% of Class Members.

*Objections*: No Class Member objected to the settlement, or any aspect of it. *Id.*, ¶ 11.

*Class Action Fairness Act Notice*: Defendant served notice required by the Class Action Fairness Act, 28 U.S.C. § 1715. ECF No. 55-1. No government official objected to or raised an issue regarding the settlement.

## Argument

**I.     The settlement satisfies all requirements and merits approval.**

"Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is 'fair, reasonable, and adequate.'" *Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015) (quoting Fed. R. Civ. P. 23(e)(2)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. As well, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of

fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

### A. The parties negotiated the settlement at arm's length and with the assistance of a well-respected mediator.

The parties negotiated the settlement through a respected mediator, Robert M. Daisley, Esq.[3] Because Mr. Daisley—appointed by the Court to serve as the mediator in this case—was instrumental in assisting the parties, there is no doubt the parties negotiated the settlement at arm's length and absent fraud or collusion. *See* 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *see, e.g.*, *Wilson v. Everbank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]").

---

[3] Mr. Dailey has mediated well over 1,500 cases since 2004. He has 30 years of experience in the negotiation, mediation, arbitration and trial of a wide range of legal disputes, and mediates approximately 300 cases a year. *See* http://daisleymediation.com/robert-m-daisley/ (last visited Mar. 29, 2017).

5

In addition, the parties' mediation occurred after written discovery, after the Court denied Chase's motion to stay this matter, and just two months before the close of discovery. As a result, the parties—and counsel with extensive experience in TCPA class litigation—were able to properly assess the strengths and weaknesses of their positions and evaluate the fairness of the settlement.

### B. Chase's legal and factual defenses posed significant risks to Plaintiffs' claims and those of Class Members.

"[T]he likelihood and extent of any recovery from the defendants absent . . . settlement" is an important consideration in assessing that settlement's reasonableness. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

While Plaintiffs strongly believe in their claims, Chase vehemently disputes that it violated the TCPA. To that end, Chase raised a host of defenses to Plaintiffs' claims, including:

- At the time of this settlement, the Supreme Court had yet to issue a ruling in *Spokeo v. Robins*, No. 13-1339, on the question of whether the alleged violation of a federal statute, without anything more, confers Article III standing. A broad, adverse ruling by the Supreme Court could have eliminated Plaintiffs' claims, and those of the class, in their entirety.[4]

---

[4] The Supreme Court decided *Spokeo* on May 16, 2016 and, after *Spokeo*, this Court retains jurisdiction over Plaintiffs' claims and the approval of the settlement. *See Rogers v. Capital One Bank (USA), N.A.*, 190 F. Supp. 3d 1144, 1147 (N.D. Ga. 2016) (citing *Spokeo* and holding: "Here, the Plaintiffs allege[] that the Defendant made unwanted phone calls to their cell phone numbers, in violation of the TCPA. As the Eleventh Circuit has held, a violation of the TCPA is a concrete injury. Because the Plaintiffs allege that the calls were made to their personal cell phone numbers, they have suffered particularized injuries because their cell phone lines were unavailable for legitimate use during the unwanted calls. The Plaintiffs have alleged sufficient facts to support standing. The Defendant's motion to dismiss should be denied."). Chase does not dispute jurisdiction under the facts of this case, but takes no position as to the effect of *Spokeo* in other matters.

- Also at the time of the settlement, the D.C. Circuit Court of Appeals was weighing a consolidated appeal of the Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order")—an action that remains pending today. Adverse action by the D.C. Circuit could have profoundly negative consequences for Plaintiffs' claims. For example, the D.C. Circuit could adopt the position advanced by Chase that the term "called party" under the TCPA refers to the intended recipient of a call, and not the person actually called. Such an interpretation could do away with, or significantly curtail, the viability of wrong number TCPA claims like those asserted by Plaintiffs and Class Members here. Of note, the D.C. Circuit only recently heard argument—one that lasted 156 minutes[5]—and has yet to issue an opinion.

- The 2015 FCC Order, while favorable for consumers, included a one-call safe harbor for calls made to reassigned cellular telephone numbers, like those at issue here. Because of this safe harbor, Chase may have viable merits and class certification defenses to many of the calls it made to Class Members.

- Plaintiffs also faced significant risk that at least some of their claims would be dismissed under the "emergency purposes" exemption of the TCPA. In enacting the TCPA, Congress provided an express exemption for calls "made for emergency purposes." 47 U.S.C. 227(b)(1)(A). Discovery in this case indicates that some of the calls to Class Members (and those to Ms. James) were made for the purpose of notifying consumers of potential fraudulent activity on their bank accounts. Had this case proceeded to summary judgment, Chase would vigorously argue that these calls are exempt from any liability, even when made to a person other than a Chase customer.

- Chase also contended that it maintains robust safeguards to ensure compliance with the TCPA. While Chase vehemently disputes any liability, to the extent any violations did occur, Chase would argue that any violation of the TCPA was unintentional and would not support increased statutory damages.

- Separately, Plaintiffs faced significant risks in obtaining class certification. Specifically, Chase was likely to assert that the class would not be ascertainable and that individual issues predominated over common questions of law and fact. Notably, some courts in the Eleventh Circuit have refused to certify contested TCPA class actions, making the likelihood of certification here uncertain. *See, e.g.*, *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *8 (M.D. Fla. Apr. 27, 2015); *Balthazor v. Central Credit Servs., Inc.*, No. 07-61822, 2012 WL 6725872, at *3-4 (S.D. Fla. Dec. 27, 2012). And this uncertainty is compounded

---

[5] https://www.cadc.uscourts.gov/recordings/recordings2017.nsf/DCF7D286EBE49FC185258051005ED50F/$file/15-1211.mp3 (last visited Feb. 21, 2017).

- because the Eleventh Circuit has not issued a published opinion on how to apply an ascertainability standard to certification requests under Rule 23.[6]

- Further, given the Supreme Court's opinion in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016), Chase could have tendered payments to Plaintiffs in amounts satisfying the complete individual relief they requested, and thereafter argued that Plaintiffs' claims were moot. This posed a real risk that Class Members would recover nothing by way of this action.

While Plaintiffs dispute each of Chase's arguments and are confident in their positions, it is obvious that their likelihood of success in this case was, and remains, a real risk, separate and apart from the risk that exists in every case of losing at trial or on appeal. Accordingly, the settlement is eminently reasonable under the circumstances. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

As this Court noted in preliminarily approving the settlement, "[d]iscounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action." *James*, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016). So, too, does a resolution of more than $81 per Class Member.

**C. The settlement falls well within the range of recovery for similar TCPA class actions.**

The settlement here—payment by Chase of a non-reversionary, all-cash fund of $3.75 million—compares well on a per-class member basis with similar TCPA class action settlements that courts have recently approved. Indeed, the settlement fund amounts to more than $5.55 for

---

[6] *See also Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) ("Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case."), *aff'd in part*, 796 F.3d 783 (7th Cir. 2015).

8

each of the 675,000 potential Class Members. *Accord Cross v. Wells Fargo Bank, N.A.*, Case 2:15-cv-01270-RWS, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.*, Case No. 1:15-cv-01156-LMM, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.) ($2.63 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($4.41 per class member); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009-EJD (N.D. Cal.) ($4.15 per class member).

The settlement, therefore, falls well within the range of approved recoveries in TCPA class actions—"a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see also id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation.").

Furthermore, the settlement provides participating Class Members with substantial monetary relief, more than $81 each, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually

9

controlling the prosecution of separate actions). In other words, the settlement provides Class Members real monetary relief that most would likely never have pursued on their own.

Finally, that each participating Class Member will receive more than $80 is a substantial value in its own right. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—significantly less than what participating Class Members will receive here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### D. The parties reached the settlement after being fully apprised of the risks and uncertainties associated with it.

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1349 (internal quotation marks omitted). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Here, the parties entered into the settlement only after they were fully apprised of the facts, risks, and obstacles involved with the possibility of continued litigation. Before mediating this matter, the parties exchanged discovery, briefed for settlement purposes the strengths and weaknesses of their respective positions, and fully briefed Chase's motion to stay and the impact of rulings from the FCC and appeals therefrom. After mediation, the parties conducted confirmatory discovery through interviews of Chase personnel to verify the methodology for identifying potential class members. As a result, the parties "conducted enough discovery to be able to determine the probability of their success on the merits, the possible range of recovery, and

the likely expense and duration of the litigation" before negotiating the settlement. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988). Class counsel's assessment of the case was also informed by their extensive experience in TCPA class actions.

### E. Class counsel support the settlement as fair, reasonable, adequate, and in the best interests of Class Members.

"In a case where experienced counsel represent the class, the Court absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Here, class counsel—whose qualifications include substantial experience with TCPA class actions—firmly believe the settlement is fair, reasonable, and adequate, and in the best interests of Class Members. Class counsel also believe the benefits of the settlement far outweigh the delay and considerable risk of proceeding to trial. *See Leverso*, 18 F.3d at 1530 n.6.

### F. The lack of any objections to the settlement supports its final approval.

As a result of the class notice, 24,156 Class Members submitted valid claims, while no Class Member objected to any aspect of the settlement. *See* Ex. A, ¶¶ 11-12. This favorable reaction supports its approval. *See, e.g.*, *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

## II.   Distribution of notice satisfied due process requirements.

"Rule 23 requires that notice to class members be the 'best notice practicable under the circumstances[.]'" *Lopez v. Hayes Robertson Grp., Inc.*, No. 1310004CIVMARTINEZGO, 2015 WL 5726940, at *6 (S.D. Fla. Sept. 29, 2015). But "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (collecting cases).

Distribution of notice here far exceeded this minimum standard. In particular, KCC used all reasonable efforts to provide direct mail notice to each Class Member. *See generally* Ex. A. This direct mail notice was supplemented by a publication notice program, which included publication in People magazine, a dedicated settlement website, and toll-free phone number. *Id.*

The resulting claims rate of more than 3.5% is in line with claims rates in other approved TCPA class action settlements, further supporting approval. *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.*, No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

**Conclusion**

Plaintiffs respectfully submit that the settlement—which requires Chase to pay $3.75 million into an all-cash, non-reversionary fund—constitutes an excellent result for Class Members. And for the foregoing reasons, they respectfully request that this Court finally approve the settlement, and enter a final judgment and order.

As noted, neither Chase nor any Class Members oppose this relief.

Dated: May 4, 2017

*/s/ Michael L. Greenwald*
Michael L. Greenwald
James L. Davidson
Jesse S. Johnson
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561.826.5477
Fax: 561.961.5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Aaron D. Radbil
GREENWALD DAVIDSON RADBIL PLLC
106 E. 6th Street, Suite 913
Austin, TX 78701
Telephone:  512.322.3912
aradbil@gdrlawfirm.com

Class Counsel

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was electronically filed on May 4, 2017, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record:

Michael S. Hooker
Guy P. McConnell
Phelps Dunbar LLP
100 S. Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: 813-472-7550
Michael.Hooker@phelps.com
Guy.McConnell@phelps.com

Mitchell E. Zamoff
Hogan Lovells US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
Telephone: (612) 402-3000
mitch.zamoff@hoganlovells.com

Adam K. Levin
Carolyn A. DeLone
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
adam.levin@hoganlovells.com
carrie.delone@hoganlovells.com

Counsel for Defendant

/s/ Michael L. Greenwald
Michael L. Greenwald