UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| MICHELLE JAMES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 8:15-cv-2424-T-23JSS |
| v. | ) | |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**CLASS COUNSEL'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS,
EXPENSES, AND INCENTIVE AWARDS**

## Table of Contents

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................. 1

   I.   This Court should approve class counsel's request for an award of attorneys' fees. .......... 1

     A.   The *Johnson* factors support class counsel's request for an award of attorneys' fees. .... 3

       1.   Class counsel obtained an excellent result. ................................................................ 3

       2.   The time and labor required to resolve this matter were significant. .......................... 5

       3.   The questions underlying this matter were both difficult and novel. .......................... 7

       4.   Class counsel relied on particular skill and experience in performing the legal services required. ..................................................................................................... 9

       5.   The time spent on this matter limited counsel's ability to work on other matters. ...... 9

       6.   The award requested here is on par with awards in similar TCPA settlements. ........ 10

       7.   Class counsel litigated this matter on a contingent basis........................................... 11

       8.   This matter was undesirable to many attorneys......................................................... 12

     B.   Additional factors support class counsel's request for an award of attorneys' fees equal to 30% of the common fund. ................................................................................ 13

   II.   This Court should approve class counsel's request for incentive awards to Ms. James and Ms. Seniuk in the amount of $5,000 each. ............................................................................ 15

   III.   This Court should approve class counsel's request for reimbursement of litigation costs and expenses.................................................................................................................... 16

Conclusion ......................................................................................................................... 17

## Introduction

For their efforts over the past 20 months to secure the settlement presented—which resulted in JPMorgan Chase Bank, N.A. ("Chase") agreeing to pay $3.75 million into a non-reversionary settlement fund for the benefit of consumers nationwide—class counsel seek an award of attorneys' fees amounting to 30% of the settlement fund, reimbursement of their reasonable litigation costs and expenses in the amount of $9,338.74, and incentive awards in the amount of $5,000 each to class representatives Michelle James and Nichole Seniuk. Class counsel's requests are reasonable, justified, and in line with awards approved in analogous TCPA class actions. Moreover, after notice to class members, not one objected to any part of the settlement or the requests for attorneys' fees, costs, expenses, and incentive awards.[1]

## Argument

### I.   This Court should approve class counsel's request for an award of attorneys' fees.

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Eleventh Circuit agrees: "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (citing Fed. R. Civ. P. 23(e)).

To that end, the Supreme Court acknowledged that "common fund fee awards should be computed as a fair percentage of the fund." *Id*. at 774 (citing *Blum v. Stenson*, 465 U.S. 886, 900

---

[1]     The class notice specifically informed class members that class counsel would seek an award of attorneys' fees in an amount up to 30% of the settlement fund, and reimbursement of litigation costs and expenses not to exceed $15,000. The notices also stated that Ms. James and Ms. Seniuk would seek incentive awards of $5,000 each.

(1984)); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 689 (M.D. Ala. 1988) ("Indeed, every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund bases."). And with reference not only to *Blum*, but to other decisions endorsing a percentage-of-the-fund calculation, the Eleventh Circuit stated: "[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* (rejecting the use of lodestar analysis for determination of fees in common fund cases); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2008 WL 11234103, at *2 (N.D. Ga. Mar. 4, 2008) ("Since 1991, the Eleventh Circuit has required district courts in this circuit to follow the 'percentage of the fund' approach to awarding fees in class action cases.").

"[T]here is[, however,] no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee[.]" *Id.* Rather, "the amount of any fee must be determined upon the facts of each case." *Id.* To make this determination, "the *Johnson* factors [may be] appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I Condo. Ass'n, Inc.*, 946 F.2 at 775. In addition, other factors such as "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action," are also pertinent. *Id.*

Against this backdrop, "[t]o avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Wreyford v. Citizens for Transp. Mobility, Inc.*, No. 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014).

2

Here, class counsel requests an award of attorneys' fees equal to 30% of the common fund.

**A. The *Johnson* factors support class counsel's request for an award of attorneys' fees.**

While "factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary," *Camden I Condo. Ass'n, Inc*., 946 F.2 at 775, "the *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Id*. at 775; *see also Columbus Drywall & Insulation, Inc*., 2008 WL 11234103, at \*2 ("In deciding what percentage of the fund to award, the court may consider the twelve factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

The *Johnson* factors are the amount involved and the results obtained; the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the experience, reputation, and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Johnson*, 488 F.2d at 717-19. However, the *Johnson* factors were developed in the statutory fee context, and "the inherent differences between statutory fee and common fund cases could justify a trial judge's decision to assign different relative weights to those factors in the two types of cases." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988). Moreover, "[r]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

**1. Class counsel obtained an excellent result.**

"The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such

counsel." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 351; *see also Mashburn*, 684 F. Supp. at 693 ("The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."); *accord Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The result achieved is a major factor to consider in making a fee award.").

Here, in the face of many significant legal hurdles discussed *infra*, *see* Argument, Section I.A.3, class counsel obtained an excellent result for Class Members. From the outset, the non-reversionary cash settlement fund, which totals $3.75 million, is noteworthy. *See* Declaration of Michael L. Greenwald, ¶ 58, attached as Exhibit A. This alone is significant, considering the changing legal landscape in which class counsel litigated this matter. *See, e.g.*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 30 FCC Rcd. 7961, *pet. for rev. pending*, *ACC Int'l v. FCC*, No. 15-1211 (D.C. Cir.).

As well, the settlement compares favorably, on a per-class member basis (calculated by dividing the total settlement fund by the number of potential class members), to similar TCPA class action settlements against financial institutions. Indeed, dividing the $3.75 million fund by 675,000 class members yields more than $5.55 per person. *Compare with, e.g.*, *Prather v. Wells Fargo Bank, N.A.*, No. 1:15-cv-04231-SCJ, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 1:15-cv-01058-TWT, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per class member); *Cross v. Wells Fargo Bank, N.A.*, Case 2:15-cv-01270-RWS, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per class member); *Markos v. Wells Fargo Bank, N.A.*, Case No. 1:15-cv-01156-LMM, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per class member); *Picchi v. World Fin. Network Bank*, No. 11-CV-61797-CIV-Altonaga/O'Sullivan (S.D. Fla.) ($2.63 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No.

4

14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($4.41 per class member); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009-EJD (N.D. Cal.) ($4.15 per class member).

Also important, the settlement here provides participating Class Members with real monetary relief—an estimated $81.87 per claimant after deducting all settlement costs, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Center, Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). This means that because of the settlement at hand more than 24,000 consumers will receive significant cash relief they otherwise would likely never have pursued on their own.

In sum, the settlement here represents an objectively excellent recovery for the class. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action— significantly less than what participating Class Members will receive here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

### 2. The time and labor required to resolve this matter were significant.

Although the time and labor required "is an essential touchstone for recovery in a statutory fee case where reasonableness is measured in part by reference to the lodestar analysis," *Brown*,

838 F.2d at 456, in a common fund case "the amount involved . . . and the results obtained may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Id*. In other words, the "'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." *Id*.

Nonetheless, class counsel spent significant time on this matter. This case has been pending for more than one-and-a-half years, and involved motion practice, discovery, and formal mediation before the parties reached a settlement. *See* Ex. A, ¶¶ 37-56, 61-62. More specifically, class counsel devoted significant time and resources to this case, including: (a) conducting an investigation into the underlying facts regarding Plaintiffs' claims and Class Members' claims; (b) preparing a class action complaint; (c) researching the law pertinent to the claims and Chase's defenses; (d) preparing and serving initial written discovery requests, negotiating Chase's discovery responses and production of documents, and gathering documents and information relevant to Chase's discovery requests to Plaintiffs; (e) researching and opposing Chase's motion to stay; (f) researching and opposing Chase's motion for protective order; (g) researching issues related to class certification, including strategies for how to best satisfy the requirements of Rule 23; (h) preparing for and attending mediation in Tampa before Mr. Daisley, including preparing a detailed mediation statement; (i) assisting with the preparation of the parties' class action settlement agreement, along with the proposed class notices and claim form; (j) preparing Plaintiffs' motion for preliminary approval of the class action settlement; (k) conducting interviews of Chase personnel to verify the methodology for identifying potential class members; (l) preparing Plaintiffs' motion for final approval of the class action settlement; (m) preparing the instant motion

for approval of an award of attorneys' fees, reimbursement of expenses, and incentive awards; (n) preparing a detailed declaration in support of settlement approval; (o) conferring with the class administrator to oversee the notice, claims, and administration process, including negotiating a hard cap on notice and administration costs; (p) repeatedly conferring with Ms. James and Ms. Seniuk throughout this case; and (q) conferring with class members to answer questions about the settlement process. *Id.*, ¶ 61.

Class counsel's time and labor involved in reaching the ultimate conclusion to this matter was therefore substantial, and supports the attorneys' fee award that class counsel requests.

### 3. The questions underlying this matter were both difficult and novel.

This matter involved many legal questions, most of which were difficult, and several of which were novel. This is evidenced, if by nothing more, than the variety of defenses that Chase asserted. *See* ECF No. 10 (setting forth 20 affirmative defenses).

Indeed, Chase made a host of arguments that the value of Class Members' claims should be severely discounted, if not eliminated entirely. For example, at the time of this settlement, the Supreme Court had yet to issue a ruling in *Spokeo v. Robins*, No. 13-1339, on the question of whether the alleged violation of a federal statute, without anything more, confers Article III standing. A broad, adverse ruling by the Supreme Court could have eliminated Plaintiffs' claims, and those of the class, in their entirety.[2]

Also at the time of the settlement, the D.C. Circuit Court of Appeals was weighing a consolidated appeal of the Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order ("2015 FCC Order")—an action that remains pending today. And an adverse

---

[2]     The Supreme Court decided *Spokeo* on May 16, 2016 and, after *Spokeo*, this Court retains jurisdiction over Plaintiffs' claims and the approval of the settlement. *See, e.g.*, *Rogers v. Capital One Bank (USA), N.A.*, 190 F. Supp. 3d 1144 (N.D. Ga. 2016).

ruling by the D.C. Circuit could have profoundly negative consequences for Plaintiffs' claims. For example, the D.C. Circuit could adopt the position advanced by Chase that the term "called party" under the TCPA refers to the intended recipient of a call, and not the person actually called. Such an interpretation could do away with, or significantly curtail, the viability of wrong number TCPA claims, like those asserted by Plaintiffs and Class Members here. Of note, the D.C. Circuit has yet to issue an opinion.

Correspondingly, even if ultimately upheld, the 2015 FCC Order, while favorable for consumers, included a one-call safe harbor for calls made to reassigned cellular telephone numbers, like those at issue here. Because of this safe harbor, Chase may have a viable defense to many of the calls it made to Class Members.

Separately, Plaintiffs also faced significant risk that at least some of their claims could be dismissed under the "emergency purposes" exemption of the TCPA. In enacting the TCPA, Congress provided an express exemption for calls "made for emergency purposes." 47 U.S.C. 227(b)(1)(A). Discovery in this case indicates that some of the calls to Class Members (and those to Ms. James) were made for the purpose of notifying consumers of potential fraudulent activity on their bank accounts. Had this case proceeded to summary judgment, Chase would vigorously argue that these calls are exempt from any liability, even when made to wrong numbers.

Arguing in favor of mitigation of any damages, Chase also contended that it maintains robust safeguards to ensure compliance with the TCPA. While Chase vehemently disputes any liability, to the extent any violations did occur, Chase would argue that any violation of the TCPA was unintentional and would not support increased statutory damages.

Finally, Plaintiffs faced significant risks in obtaining class certification. Specifically, Chase was likely to assert that the class would not be ascertainable and that individual issues

8

predominated over common questions of law and fact. Notably, some courts in the Eleventh Circuit have refused to certify contested TCPA class actions, making the likelihood of certification here uncertain. *See, e.g.*, *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *8 (M.D. Fla. Apr. 27, 2015); *Balthazor v. Central Credit Servs., Inc.*, No. 07-61822, 2012 WL 6725872, at *3-4 (S.D. Fla. Dec. 27, 2012). And this uncertainty is compounded by the fact that the Eleventh Circuit has not issued a published opinion on the issue of ascertainability in consumer protection class actions.

In short, many of the issues underlying this matter involve difficult and unsettled legal questions, which are at the forefront of class action, constitutional, and consumer protection law, further underscoring the value of the services provided by class counsel.

### 4.  Class counsel relied on particular skill and experience in performing the legal services required.

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL 12540344, at *4 (N.D. Ga. Oct. 26, 2012) (internal citation omitted). Here, Plaintiffs' attorneys—who have been appointed class counsel in a host of class actions under the TCPA—relied on their particular skill in litigating and negotiating the settlement. *See* Ex. A, ¶¶ 8-36. Class counsel's substantial experience and skill support the requested fee award.

### 5.  The time spent on this matter limited counsel's ability to work on other matters.

"[S]ubstantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *2. This is the case here, as class counsel have expended a significant amount of time to ultimately obtain the results they achieved for the class. *See* Ex. A, ¶¶ 37-56, 61-62; *accord Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-

CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("Because of the number of hours that class counsel have been required to devote to this case, class counsel necessarily were precluded from handling other litigation matters during that time.").

### 6.   The award requested here is on par with awards in similar TCPA settlements.

"Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011). Class counsel's request for an award of attorneys' fees in the amount of 30% of the $3.75 million common fund, therefore, is well within the range of fee awards affirmed by the Eleventh Circuit and approved by district courts within it. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of one-third of a $40 million settlement fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3% of $1.06 billion settlement fund); *In re: Terazosin Hydrochloride Antitrust Litig.*, No. 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of one-third of settlement fund of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement fund of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (awarding fees of one-third of settlement fund of $77.5 million).

Importantly, this analysis does not differ when limited to TCPA class actions. *See, e.g.*, *Schwyhart v. AmSher Collection Servs., Inc.*, No. 2:15-cv-1175-JEO, 2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) (awarding attorneys' fees of one-third of the settlement fund, plus the reimbursement of litigation expenses); *Markos*, 2017 WL 416425, at *3 (awarding attorneys' fees amounting to 30% of the common fund because "the Settlement provides substantial benefits to the Settlement Class. Second, the Court finds the payment fair and reasonable in light of the work performed by Class Counsel."); *Soto v. The Gallup Org.*, No. 13-cv-61747, Dkt. No. 95 (S.D. Fla.

Nov. 24, 2015) (awarding fee of one-third of settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, Dkt. No. 95 (S.D. Fla. June 24, 2015) (same).[3] Class counsel's request, therefore, comports with customary fee awards in similar cases.

### 7.  Class counsel litigated this matter on a contingent basis.

"Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *3 (quoting *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992)). This is, in part, because even in ordinary cases "uncertain is the outcome," *id.*, and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Id.*

With this in mind, the Southern District of Florida observed:

> A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

---

[3]      *See also, e.g.*, *Ikuseghan v. Multicare Health Sys.*, No. C14-5539, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding 30%, plus costs); *Prater v. Medicredit, Inc.*, No. 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding one-third, plus costs); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-cv-8285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015) (awarding 33%); *Hageman v. AT&T Mobility LLC, et al.*, No. 1:13-cv-50, Dkt. No. 68 (D. Mont. Feb. 11, 2015) (awarding 33%); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33%); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than one-third); *Cummings v. Sallie Mae*, No. 1:12-cv-9984, Dkt. No. 91 (N.D. Ill. May 30, 2014) (awarding 33%); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (awarding 33%); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) (awarding 33%); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531, Dkt. No. 67 (S.D. Ill. Sept. 8, 2010) (awarding one-third); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-5456, Dkt. No. 424 (N.D. Ill. Oct. 21, 2011) (awarding 33%); *Holtzman v. CCH*, No. 1:07-cv-7033, Dkt. No. 33 (N.D. Ill. Sept. 30, 2009) (awarding 33%).

*Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) (internal citation omitted).

Here, Plaintiffs entered into a contingent attorneys' fee agreement with their counsel. *See* Ex. A, ¶¶ 6, 63. In particular, the agreement permitted class counsel to apply for an award of attorneys' fees in the event that a common fund was established for the benefit of the class. Of note, the agreement also stated that class counsel would seek no more than 35% of the common fund as compensation for work performed in connection with this matter.

Thus, that the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1215 ("This factor weighs heavily in favor of a 31 and 1/3% percentage fee for Class Counsel because the fee in this action has been completely contingent."); *accord Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

### 8. This matter was undesirable to many attorneys.

That class counsel worked for over one-and-a-half years to ultimately obtain the settlement—with no payment during that time and no guarantee of success—makes this matter undesirable to many. *See Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *4 (explaining that the prospect of expending significant time and money with no assurance of payment, to litigate a case against well-represented defendants, would deter many lawyers from assuming representation).

12

So although class counsel ultimately obtained a result that any attorney should be proud of, the road leading to a resolution here was paved with large quantities of time and expense that would deter many attorneys from accepting this matter. *See* Ex. A, ¶¶ 37-56, 61. And this is especially true given the high quality of legal representation that Chase obtained in this matter.

**B. Additional factors support class counsel's request for an award of attorneys' fees equal to 30% of the common fund.**

"Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.'" *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217. This is particularly important here, where, as previously noted, *see supra*, Argument, Section I.A.1, damages awards under the TCPA—a statute that does not include a fee-shifting provision—are often too small to incentivize individual actions. And given such a circumstance, "courts treat successfully fulfilling [the private attorney general role] as a . . . factor when awarding class counsel attorneys' fees." *Id.* (citing *Ressler*, 149 F.R.D. at 657 (noting that when class counsel act as private attorneys general, "public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions")).

The public policy fostered by the private attorney general role is, however, frustrated where a large defendant has the ability to overwhelm, for example, the small-firm plaintiff lawyers who typically represent consumers in actions under the TCPA. This is a reality that results from the fact that, as noted above, *see supra*, Argument, Section I.A.7, class counsel were required to risk a significant amount of time, over the course of nearly two years, as well as out-of-pocket costs and expenses, to reach the result obtained here. And "[u]nless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217.

Accordingly, a contingent attorneys' fee award that amounts to 30% or more of the common fund is appropriate where "absent an award of [such fees] . . . the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self interest rather than obtaining real justice on behalf of their injured clients." *Id*. at 1217-18 (citing John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working*, Maryland Law Review, 216, 225-26 (1983) (the private attorney general provides an important mechanism "to enforce the federal antitrust and securities laws, to challenge corporate self-dealing in derivative actions, and to protect a host of other statutory policies," but in the absence of appropriate incentive structures, "litigated judgments are few, cheap settlements are common, and . . . the private watchdog can be bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his acceptance of an inadequate settlement")).

With this is mind, and considering the unique circumstances of this matter—the lack of incentive for aggrieved consumers to bring individual suits, that Chase unquestionably is a large defendant with substantial means, and that Chase employs excellent legal counsel—class counsel's request for attorneys' fees is supported by the economics involved in litigating this matter.

What's more, and after a robust notice program, no Class Members objected to any aspect of the settlement, including the requested attorneys' fees and expenses. *See* Ex. A, ¶ 64. This is significant, as the absence of a large number of objections strongly indicates that an attorneys' fee award equal to 30% of the common fund is fair and reasonable. *See Cox v. Sprint Commc'ns Co. L.P.*, No. 6:10-CV-01262-KGG, 2012 WL 5512381, at *4 (D. Kan. Nov. 14, 2012) ("The absence

of objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

## II. This Court should approve class counsel's request for incentive awards to Ms. James and Ms. Seniuk in the amount of $5,000 each.

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (explaining that "[i]ncentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit," and noting that "[n]umerous courts have authorized incentive awards"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ("[Courts] routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *Allapattah Servs.*, 454 F. Supp. 2d at 1218 ("Incentive awards are not uncommon in class litigation where, as here, a common fund has been created for the benefit of the class.").

Here, Ms. James and Ms. Seniuk took critical steps to protect the interests of the class, and they each spent considerable time pursuing their claims. In particular, both Ms. James and Ms. Seniuk frequently communicated with their counsel by telephone and email. They kept themselves apprised of this matter by reading documents filed with this Court, and approving drafts before filing. And both attended mediation in Tampa, actively participating in the settlement negotiations. In Ms. Seniuk's case, that involved travel from Pennsylvania. *See* Ex. A, ¶¶ 66-70.

Also considerable, class counsel's request for incentive awards to Ms. James and Ms. Seniuk in the amount of $5,000 each is in line with—and in many cases significantly less than—incentive awards that courts have approved in comparable TCPA matters. *See, e.g.*, *Schwyhart*, 2017 WL 1034201 (approving $10,000 incentive award to class representative in TCPA class action); *Cross v. Wells Fargo Bank, N.A.*, No. 2:15-cv-01270-RWS, ECF No. 103 (N.D. Ga. Feb.

15

10, 2017) (approving incentive award of $15,000 to TCPA class representative); *Markos*, 2017 WL 416425, at *3 (approving incentive awards of $20,000 each in TCPA class action); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from $1 million common fund); *Prater*, 2015 WL 8331602, at *3 ($20,000 incentive award in TCPA class action); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative).

This Court, therefore, should approve class counsel's request for incentive awards to Ms. James and Ms. Seniuk in the amount of $5,000 each.

### III. This Court should approve class counsel's request for reimbursement of litigation costs and expenses.

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003). Here, class counsel incurred reasonable costs and expenses in connection with this matter, including travel expenses, mediation costs, filing and court admission fees, and other necessary expenses.

Importantly, the categories of expenses for which class counsel seek reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla 1988) ("In addition, plaintiff's counsel is entitled to be reimbursed from the class fund

for the reasonable expenses incurred in this action. In summary, these expenses include the necessary costs associated with any action: travel, depositions, filing fees, postage, telephone, and copying. The $31,456.41 paid by the plaintiff's counsel for these expenses is fair and reasonable.") (internal citation omitted).

Here, class counsel seeks the reimbursement of $9,338.74 in litigation costs and expenses. *See* Ex. A, ¶¶ 71-77 (documenting reimbursable litigation costs and expenses). These expenses are eminently reasonable in a class action like this, and were necessary to the successful prosecution of this action.

Noteworthy, and as with class counsel's requests for an award of attorneys' fees and incentive awards to Ms. James and Ms. Seniuk, no class members objected to counsel's request for reimbursement of litigation costs and expenses, which are considerably less than the $15,000 in costs and expenses set forth in the class notice.

## Conclusion

Class counsel respectfully request that this Court grant their unopposed requests for an award of attorneys' fees in an amount equal to 30% of the common fund, as well as reimbursement of litigation costs and expenses in the amount of $9,338.74, and for incentive awards to Ms. James and Ms. Seniuk in the amount of $5,000 each.

Dated: May 4, 2017

/s/ Michael L. Greenwald
Michael L. Greenwald
James L. Davidson
Jesse S. Johnson
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561.826.5477
Fax: 561.961.5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Aaron D. Radbil
GREENWALD DAVIDSON RADBIL PLLC
106 E. 6th Street, Suite 913
Austin, TX 78701
Telephone:  512.322.3912
aradbil@gdrlawfirm.com

Class Counsel

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed on May 4, 2017, via the Court

Clerk's CM/ECF system, which will provide notice to all counsel of record:

Michael S. Hooker
Guy P. McConnell
Phelps Dunbar LLP
100 S. Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: 813-472-7550
Michael.Hooker@phelps.com
Guy.McConnell@phelps.com

Mitchell E. Zamoff
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
Telephone: (612) 402-3000
mitch.zamoff@hoganlovells.com

Adam K. Levin
Carolyn A. DeLone
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
adam.levin@hoganlovells.com
carrie.delone@hoganlovells.com

Counsel for Defendant

/s/ Michael L. Greenwald
Michael L. Greenwald

18